**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick, Arizona Bar #004738
J. James Christian, Arizona Bar #023614
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com; jjc@tblaw.com

**THE ROSEN LAW FIRM P.A.**
Laurence Rosen
350 Fifth Avenue, Suite 5508
New York, New York 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
lrosen@rosenlegal.com

Counsel for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER BURRITT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>NUTRACEA, BRADLEY D. EDSON, TODD C. CROW, AND DAVID BENSOL,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Jennifer Burritt, individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by

1

and regarding NutraCea, or the "Company," securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased the common stock of NutraCea for the time period August 14, 2007 through and including February 23, 2009 (the "Class Period"), seeking to recover damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b), as a substantial part of the conduct complained of herein occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff Jennifer Burritt, as set forth in the accompanying certification, incorporated by reference herein, purchased NutraCuea securities at artificially inflated prices during the Class Period and has been damaged thereby. *See* Exhibit A.

7. Defendant NutraCea is a California Corporation with its principal executive

offices located at 5090 N. 40th Street, Suite 400, Phoenix, Arizona. NutraCea operates in two business segments: the NutraCea segment, which manufactures and distributes bulk ingredients primarily derived from Stabilized Rice Bran ("SRB"), utilizing NutraCea's unique and proprietary technology and the Irgovel segment, which consists of NutraCea's rice-bran oil and fatted and de-fatted SRB manufacturing subsidiary in Pelotas, Brazil. At all relevant times herein, the Company's common stock was traded on the OTC Bulletin Board ("OTC.BB") under ticker "NTRZ.OB."

8. Defendant Bradley D. Edson ("Edson") at all relevant times herein was the Company's Chief Executive Officer, President and a member of the board of directors.

9. Defendant Todd C. Crow ("Crow") at all relevant times herein was the Company's Chief Financial Officer.

10. Defendant David Bensol ("Bensol") at all relevant times herein was the Company's chairman of the board.

11. Edson, Crow and Bensol are collectively referred to hereinafter as the "Individual Defendants."

12. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that dissemination of the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein is the result of collective actions of the narrowly defined group of defendants identified above. Each of the above officers and directors of NutraCea and its subsidiaries and affiliates, by virtue of his position with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels, and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said Defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements regarding the Company were being issued, and approved or ratified these statements, in

violation of the federal securities laws.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons who purchased the common stock of NutraCea during the Class Period and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

14. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, NutraCea's securities were actively traded on the OTC.BB. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by NutraCea or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

15. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

16. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

17. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and

management of NutraCea; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

18. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19. The Class Period begins August 14, 2007 when the Company issued a materially false and misleading press release and corresponding Form 10-Q with the SEC, announcing the Company's second quarter fiscal 2007 financial results. Of the $8.0 million in revenue recognized for the three months ended June 30, 2007, the 10-Q recognized $2.6 million in revenue that should not have been recognized. The $2.6 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price.

20. The 10-Q was signed by Defendant Edson and Defendant Crow, and individually certified by defendants Edson and Crow, pursuant to the Sarbanes-Oxley Act of 2002, attesting to the accuracy and completeness of the report.

21. On November 7, 2007 the Company filed a materially false and misleading Form 10-Q with the SEC, stating the Company's third quarter fiscal 2007 financial results. The 10-Q recognized $13.0 million in revenue for the nine months ended September 30, 2007. $2.6 million of the $13.0 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price.

22. The 10-Q was signed by Defendant Edson and Defendant Crow, and individually certified by defendants Edson and Crow, pursuant to the Sarbanes-Oxley Act of 2002, attesting to the accuracy and completeness of the report.

23. On March 17, 2008 the Company filed a materially false and misleading Form 10-K with the SEC, stating the Company's fiscal year 2007 financial results. The 10-K recognized $22.2 million in revenue for the year ended December 31, 2007. $4.6 million of the $22.2 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price. $2.6 million of the $22.2 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price. Additionally, in December 2007, $2.0 million of the $22.2 million should not have been recognized because a $2.0 million sale did not meet accounting requirements for recognition of revenue in bill and hold transactions.

24. The 10-K was signed by Defendant Edson and Defendant Crow, and individually certified by defendants Edson and Crow, pursuant to the Sarbanes-Oxley Act of 2002, attesting to the accuracy and completeness of the report.

25. On August 11, 2008 the Company filed a materially false and misleading Form 10-Q with the SEC, reiterating the Company's second quarter fiscal 2007 financial results. The 10-Q recognized $8.0 million in revenue for the three months ended June 30, 2007. $2.6 million of the $8.0 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price.

26. The 10-Q was signed by Defendant Edson and Defendant Crow, and individually certified by defendants Edson and Crow, pursuant to the Sarbanes-Oxley Act of 2002, attesting to the accuracy and completeness of the report.

27. On November 7, 2008 the Company filed a materially false and misleading Form 10-Q with the SEC, reiterating the Company's third quarter fiscal 2007 financial results. The 10-Q recognized $13.0 million in revenue for the nine months ended September 30, 2007. $2.6 million of the $13.0 million should not have been recognized because it was derived from a sale in which the purchaser never paid NutraCea the purchase price.

28. The 10-Q was signed by Defendant Edson and Defendant Crow, and individually certified by defendants Edson and Crow, pursuant to the Sarbanes-Oxley Act of 2002, attesting to the accuracy and completeness of the report.

# TRUTH EMERGES; DAMAGING INVESTORS

29.   On February 20, 2009, the price of NutraCea stock closed at was $0.37/share.

30.   In the morning of February 23, 2009, before market open, the Company issued a press release admitting that the Company quarterly reports for the quarterly periods from 2Q07 through 3Q08 and annual report for fiscal years 2007 and 2008 were materially inaccurate and would have to be restated.

31.   News of the restatement caused the market price of NutraCea securities to drop substantially. The price of the stock closed on February 23, 2009 at $0.29, down 22% from the prior trading day's closing price.

32.   As the market more fully assimilated the negative news of the restatement, the stock price fell further the next day. On February 24, 2009, NutraCea's stock price fell further to $0.25/share or another 14%, as a result of the restatement.

33.   Had the Plaintiff and the Class been aware of the adverse information that the Company failed to disclose they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

## Applicability of Presumption of Reliance: Fraud-on-the-Market Doctrine

34.   At all relevant times, the market for NutraCea's common stock was an efficient market for the following reasons, among others:

(a)   NutraCea's stock met the requirements for listing, and was listed and actively traded on the OTC.BB, a highly efficient and automated market;

(b)   During the class period, on average, several hundreds of thousands of shares of NutraCea stock were traded on a weekly basis, demonstrating a very active and broad market for NutraCea stock and permitting a *very strong* presumption of an efficient market;

(c)   As a regulated issuer, NutraCea filed with the SEC periodic public reports during the Class Period;

(d)   NutraCea regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on

the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

        (e)    NutraCea was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

        (f)    Numerous NASD/FINRA member firms were active market-makers in NutraCea stock at all times during the Class Period; and

        (g)    Unexpected material news about NutraCea was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

      35.    As a result of the foregoing, the market for NutraCea's common stock promptly digested current information regarding NutraCea from all publicly available sources and reflected such information in NutraCea's stock price. Under these circumstances, all purchasers of NutraCea's common stock during the Class Period suffered similar injury through their purchase of NutraCea's common stock at artificially inflated prices, and a presumption of reliance applies.

### **NO SAFE HARBOR**

      36.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or

the forward-looking statement was authorized and/or approved by an executive officer of NutraCea who knew that those statements were false when made.

**FIRST CLAIM**
**Violation of Section 10(b) Of**
**The Exchange Act Against and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

37. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

38. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and sell NutraCea's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

39. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for NutraCea's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

40. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of NutraCea as specified herein.

41. These Defendants employed devices, schemes and artifices to defraud while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of NutraCea's value and

performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about NutraCea and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaging in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of NutraCea's securities during the Class Period.

42. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination to the investing public of information that they knew or recklessly disregarded to be materially false and misleading.

43. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing from the investing public NutraCea's operating condition and future business prospects and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in

failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

44.  As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of NutraCea's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of NutraCea's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired NutraCea securities during the Class Period at artificially high prices and were or will be damaged thereby.

45.  At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding NutraCea's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their NutraCea securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

46.  By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

47.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

48.  This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CLAIM
### Violation of Section 20(a) Of
### The Exchange Act Against the Individual Defendants

49. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of NutraCea within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

51. In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

52. As set forth above, NutraCea and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

53. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

54. This action was filed within two years of discovery of the fraud and within five

1  years of each plaintiff's purchases of securities giving rise to the cause of action.

2  **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

3        (a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

      (b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      (d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: February 27, 2009.

                              **TIFFANY & BOSCO, P.A.**

                              By   s/ Richard G. Himelrick
                              Richard G. Himelrick
                              J. James Christian
                              Third Floor Camelback Esplanade II
                              2525 East Camelback Road
                              Phoenix, Arizona 85016-4237

                              **THE ROSEN LAW FIRM P.A.**
                              Laurence Rosen
                              350 Fifth Avenue, Suite 5508
                              New York, New York 10118

                              Counsel for Plaintiff

397344.doc