**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com
jjc@tblaw.com

Liaison Counsel for Plaintiffs

**THE ROSEN LAW FIRM P.A**.
Phillip Kim (*pro hac vice*)
Laurence Rosen (*pro hac vice*)
Timothy Brown (*pro hac vice*)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com
tbrown@rosenlegal.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER BURRITT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | No. CV-09-00406-PHX-FJM<br>(**Consolidated**)<br><u>CLASS ACTION</u> |
| Plaintiff,<br>vs.<br><br>NUTRACEA, BRADLEY D. EDSON, TODD C. CROW, AND DAVID BENSOL,<br><br>Defendants. | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NUTRACEA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT |

# <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS……………………………………………...………1

    I.   THE DEFENDANTS…………………………………………..…..1

    II.   THE ACCOUNTING FRAUD………………………………….....2

    III.  NUTRACEA'S OCTOBER 20, 2009 10-K…………………….…...4


ARGUMENT……………………………………………………….....5


    I.   PLAINTIFFS ADEQUATELY ALLEGE CLAIMS FOR SECURITIES
FRAUD UNDER SECTION 10(B) OF THE EXCHANGE ACT
AND RULE 10B-5……………………………………………..…….5

        A.  The Complaint Adequately Alleges Misstatements of
Material Fact………………………………………………….6

        B.  Plaintiffs Adequately Allege NutraCea's Scienter……………......7

        C.  Plaintiffs Adequately Allege Loss Causation………….……..7

        D.  The Complaint Adequately Alleges Reliance……………....…11

    II.  THE COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER
A.R.S. § 44-1991(A)(3) AND § 44-2003(A) ………………………......…17

CONCLUSION……………………………………………….……......17

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5

*Alaska Elec. Pension Fund v. Flowserve Corp.*,

6

    572 F.3d 221, 231 (5th Cir. 2009) …...……..……..……..……..……..……..8

7

*Basic v. Levinson*,

8

    485 U.S. 224 (1988)…………………………………….…...…11, 12

9

*Batwin v. Occam Networks, Inc.*,

10

    2008 WL 2676364 (C.D. Cal. July 1, 2008)…………..………...……………12

11

*Binder v. Gillespie*,

12

  184 F.3d 1059 (9th Cir. 1999)…………………………..………….... 12, 16, 17

13

*Cammer v. Bloom*,

14

    711 F. Supp. 1264 (D.N.J. 1989)………..…..….. 12, 13, 14, 15, 16, 16 n.10, 17

15

*Cheney v. Cyberguard Corp.*,

16

    213 F.R.D. 484 (S.D. Fla. 2003) ..……………………………..……...…14

17

*Connecticut Retirement Plans and Trust Funds v. Amgen*,

    2009 WL 2633743 (C.D. Cal. Aug. 12, 2009) …………....…….……….16 n.12

18

*Dura Pharms., Inc. v. Broudo*,

19

    544 U.S. 336 (2005)…………….………………..……..….…..……..6, 7, 11

20

*Griffin v. GK Intelligent Sys. Inc.*,

21

    196 F.R.D. 298 (S.D. Tex. 2000)..………………………………...…….…14

22

*Hayes v. Gross*,

23

    982 F.2d 104 (3d Cir. 1992)……………………..……………..……..…12

24

*Hoexter v. Simmons*,

25

    140 F.R.D. 416 (D. Ariz. 1991) ……………………………………17

26

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,

27

    324 F. Supp. 2d 474 (S.D.N.Y. 2004) …………………….………….6

28

*In re Bradley Pharmaceuticals, Inc. Sec. Litig.*,
        421 F.Supp.2d 822 (D.N.J. 2006)………………………………………………10, 11

*In re Connetics Corp. Sec. Litig.*,
        257 F.R.D. 572 (N.D. Cal. 2009) ………………..……………..…..…16 n.12

*In re CV Therapeutics Sec. Lit.*,
        2004 WL 1753251 (N.D. Cal. 2004) …………….......…………………..…..7

*In re Cylink Sec. Litig.*,
        178 F.Supp.2d 1077 (N.D. Cal. 2001) ……………………………..…….6 n.4

*In re Daou Sys.*,
        411 F.3d 1006 (9th Cir.2005)……….…..………………………..……..…8

*In re DRDGOLD Ltd., Sec. Litig.*,
        472 F.Supp.2d 562 (S.D.N.Y. 2007) …………….…………..…………...6 n.4

*In re Empyrean Bioscience, Inc. Sec. Litig.*,
        255 F. Supp.2d 751 (N.D. Ohio 2003)..……………….....................………12, 17

*In re Gilead Sciences Sec. Litig.*,
        536 F.3d 1049 (9th Cir. 2008) ……………………………..…….…..……8

*In re HiEnergy Techs., Inc. Sec. Litig.*,
        2006 WL 2780058 (C.D. Cal. Sept. 26, 2006)…………………...........16 n.12, 17

*In re Keithly Instruments, Inc. Sec. Litig.*,
        268 F.Supp.2d 887 (N.D. Ohio 2002) …………………….…………......16 n.11

*In re Motorola Sec. Litig.*,
        505 F.Supp.2d 501 (N.D. Ill. 2007)……………………………..…….......11

*In re Nature's Sunshine Product's Inc. Sec. Litig.*,
        251 F.R.D. 656 (D. Utah 2008)……………………………………......13

*In re Parmalat Sec. Litig.*,
        375 F.Supp.2d 278 (S.D.N.Y. 2005)……………………………….......12

iii

*In re Seitel, Inc. Sec. Litig.*,
    447 F. Supp. 2d 693 (S.D. Tex. 2006)...……………………..……………11

*In re Sipex Corp., Secs. Litig.*,
    2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) …………………..…………6 n.4

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp.2d 247 (S.D.N.Y. 2008)…………….……………..…….…..………8

*In re Turbodyne Techs., Inc. Sec. Litig.*,
    2000 WL 3396113 (C.D. Cal. Mar. 15, 2000)…..…………….…..…....………13

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F.Supp.2d 964 (N.D. Cal. 2009) …………………………………..………7

*Johnson v. Alijan*,
    257 F.R.D. 587 (C.D. Cal. 2009)…..…………………………..…………7

*Krogman v. Sterritt*,
    202 F.R.D 467 (N.D. Tex. 2001)…………………………….………14 n.8

*Lehocky v. Tidel Techs., Inc.*,
    220 F.R.D. 491 (S.D. Tex. 2004) …………………………………........………13

*Lentell v. Merrill Lynch*,
    396 F.3d 161 (2d Cir. 2005)……………………………………………..………7

*Levine v. SkyMall, Inc.*,
    2002 WL 31056919 (D. Ariz. May 24, 2002)...………..……....12, 13, 14, 15, 16 n.12

*Lormand v. US Unwired, Inc.*,
    565 F.3d 228 (5th Cir. 2009) ……………………….……..…………..………8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)……...………….4 n.3, 6, 7, 8, 11 n.6, 13 n.7, 16 n.9

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
    54 F. 3d 1424 (9th Cir. 1995). ……………………..…..……..……….....………7

iv

*O'Neill v. Appel,*
    165 F.R.D. 479 (W.D. Mich. 1996) …………………...……………......14 n.8

*Payne v. DeLuca,*
    433 F.Supp.2d 547 (E.D. Pa. 2006) ……………………………….……..7 n.5

*Raymond v. Merrill Lynch, Pierce, Fenner & Smith*,
    1991 WL 520500 (C.D. Cal. Aug. 5, 1991)………...…………..………....…12

*Schleicher v. Wendt,*
    2009 WL 761157 (S.D. Ind. Mar. 20, 2009*)* …………...…………………16 n.10

*S.E.C. v. Gane*,
    2005 WL 90154 (S.D. Fla. Jan. 4, 2005) …………..……….…….…............13

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    2006 WL 216887 (S.D.N.Y. Aug. 1, 2006)……...……………….….…..……14

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
    2009 WL 890479 (D. Ariz. Mar. 31, 2009)…...………………….…………....8, 9

*Tellabs, Inc. v. Makor Issues and Rights, Ltd.*,
    127 S. Ct. 2499 (2007)…………………………….…........................................6

*Terra Ins. Co. v. New York Life Inv. Management, LLC,*
    2009 WL 23658833 (N.D. Cal. Jul. 30, 2009) …………….......…….…........16 n.11

*Wagner v. Barrick Gold,*
    251 F.R.D. 112 (S.D.N.Y. 2008) …………………...…………………16 n.10

## STATUTES

A.R.S. § 44-1991(A) …………….…………….………..……………17
A.R.S. § 44-2003(A) …………….…………….………………...…17
Federal Rule of Civil Procedure 12(b)(6)……………………………..…6, 8

Lead Plaintiff Harvey Pensack, and named plaintiffs Jennifer Burritt and Jose Medrano (collectively "Plaintiffs"), individually and on behalf of all other persons similarly situated submit this memorandum in opposition defendant NutraCea's ("NutraCea" or the "Company") motion to dismiss the First Amended Consolidated Class Action Complaint (the "Complaint").   Plaintiffs join, adopt and incorporate the arguments, made in Plaintiffs' separate memoranda in opposition to the motions to dismiss filed by defendants Bradley Edson ("Edson") and Todd C. Crow ("Crow").

## STATEMENT OF FACTS

This securities class action alleges Defendants misrepresented and omitted material facts in NutraCea's press releases and SEC filings, particularly in the Company's financial statements. The action is brought on behalf of all persons and entities, other than Defendants, who purchased NutraCea common stock ("Stock") during the period between April 2, 2007 and February 23, 2009 (the "Class Period"), seeking remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder and under the Arizona securities laws.

## I.      THE DEFENDANTS

NutraCea, is a small California corporation with principal offices in Phoenix, Arizona. ¶2.[1]   NutraCea manufactures, develops and markets nutraceuticals and related food products. During the Class Period, a majority of the Company's sales and revenue were derived from a very small number of customers.   For fiscal year ("FY") ended December 31, 2006, five customers accounted for 67% of the Company's total sales revenue, with one customer, ITV Global, Inc. ("ITV"), accounting for 45% of the Company's total sales. For FY ended December 31, 2007 six customers, including ITV accounted for 59% of the Company's total product sales revenue. ¶3.

---

1   Citations to the Complaint will be referred to herein as "¶" (or "¶¶") followed by the number of the specific paragraph(s) cited to.

1   Defendant Edson was NutraCea's CEO, President, and director during the Class

2   Period. Edson was forced to resign on March 10, 2009 because of the accounting fraud.

3   ¶43. Defendant Crow was the CFO until he resigned, also because of the fraud, on

4   November 6, 2008. ¶44. At all relevant times, the Company's Stock was actively traded

5   on the NASDAQ Bulletin Board. It was delisted on May 5, 2009, after this action was

6   filed, as a result of NutraCea's failure to timely file its corrected financial statements

7   with the Securities and Exchange Commission ("SEC"). ¶¶42, 131.

8   ## II.   THE ACCOUNTING FRAUD

9   During the Class Period, Defendants[2] materially overstated the Company's

10  revenue and net income in violation of the most fundamental Generally Accepted

11  Accounting Principles ("GAAP") and the Company's own publicly stated revenue

12  recognition policy. Defendants overstated revenue and net income, reporting "record"

13  results for certain periods, and substantial profits, when in fact, the Company had

14  actually incurred net losses. ¶¶63-81, 83, 100. Significantly, all but one of the

15  improperly recorded revenue transactions, occurred on the eve of the end of fiscal

16  quarters. *E.g.,* ¶10, 13, 20.

17  At least three of the four improper transactions were nothing but sham revenue

18  transactions. One was a consignment arrangement in which the product was not shipped

19  to the customer, Famous Discoveries, and did not obligate Famous Discoveries to

20  purchase any product. *E.g.,* ¶¶19, 74-79. Another was a highly questionable arrangement

21  in which the purchase of NutraCea products was secretly funded with a loan from a

22  former executive officer of, and current consultant to the Company. *E.g.*, ¶9. The third

23  involved a sham-round trip transaction in which the net substance was that only a

24  fraction of the revenue reported was actually earned. *E.g.,* ¶¶21, 80-81.  Notably, the

25  revenue initially recorded on these three transactions has all been *reversed.* The fourth

26  transaction, a "bill and hold" arrangement with ITV, was fraudulent because NutraCea

27  _____

28  2   "Defendants" as used herein shall mean NutraCea, Edson and Crow.

persuaded ITV to fraudulently prepare and backdate a letter purporting to request a bill and hold arrangement so as to justify NutraCea prematurely recognizing revenue on this transaction. *E..g,* ¶1, 68d, & e.

Defendants' fraud involved the Company' largest and most prominent customers and concerned four very large transactions. The accounting fraud resulted in the Company overstating its revenue and net income as follows:

- The Company recorded the $1.6 million Famous Discoveries transaction in December of 2006. This fraudulent transaction allowed the Company to report "record" results for Q4 2006 and FY 2006. ¶83. Edson even touted the "record results" and the Company's "first full year of profitability." ¶84. This transaction overstated revenue in Q4 2006 by 43% and allowed the Company to report Q4 2006 net income of $778,000 when in fact the Company had a net loss of $505,000. The transaction also allowed the Company to overstate FY net income by 425%! *E.g.,* ¶86d.

- The $2.6 million revenue/related party loan transaction and the $5 million sham round-trip transaction (which occurred in June 2007) allowed the Company to yet again report "record results" and overstated the Company's Q2 2007 revenue by 141% or $7.6 million and allowed the Company to report net income of $2 million when in truth the Company had an unprofitable quarter losing $4.7 million for that period. *E.g.,* ¶¶104d.

- The fraudulent ITV $2 million "bill and hold" transaction recorded in December 2007, allowed the Company to overstate Q4 2007 revenue by nearly 52%. *E.g.,* ¶ 112a.

During the time when Defendants were fraudulently recording revenue, Defendants issued false reassurances to investors that NutraCea's revenue recognition practices were impeccable and complied with GAAP. ¶93-97, 105. Defendants' fraudulent misrepresentations enabled the Company to complete a $20 million stock offering in April 2008 to raise much needed cash, and for Edson to receive a rare cash

1    bonus of $280,000 in April 2008 that exceeded his entire salary in 2007, each of which

2    occurred only a few weeks after the Company filed its materially false and misleading

3    Q4 and FY 2007 results with the SEC on March 17, 2008. ¶142.

4         As a result of the accounting fraud, (i) the SEC commenced a formal

5    investigation of NutraCea's accounting for the items that are the subject of the

6    restatement; (ii) the Company's stock was delisted from the NASDAQ Bulletin Board;

7    (iii) CEO Edson was forced to leave the Company; and (iv) CFO Crow was replaced

8    after two replacement CFOs resigned rather than sign the Company's financial

9    statements and Sarbanes-Oxley certifications--Notably, the CFO the Company finally

10    hired and retained to replace Crow, inexplicably resigned as well. *E.g.*, ¶¶ 27-28, 147,

11    148.

12         When the truth of Defendants' accounting fraud was partially disclosed to the

13    market on February 23, 2009, the price of NutraCea Stock fell over 29% damaging

14    Plaintiffs and the Class.  ¶30.

15  **III.    NUTRACEA'S OCTOBER 20, 2009 10-K**

16         On October 20, 2009, NutraCea filed a 185 page annual report for the fiscal year-

17    ended December 31, 2008.  A copy of the 10-K is attached to the Declaration of Phillip

18    Kim ("Kim Decl.") as Ex. 1.[3]  The 10-K set forth the Company's restatement

19    adjustments detailed above (Ex. 1, at pp. F-11-F-14), and included additional

20    information describing the accounting fraud.  The 10-K states in relevant part:

21
        The Audit Committee concluded that the errors and irregularities were primarily
22        the result of an ineffective control environment which, among other things,
        permitted the following to occur:
23        •    recording of improper accounting entries; and
24        •    **withholding information from, and providing of improper**
25        **explanations and supporting documentation to, the Company's Audit**

26

27    3   The Court can take judicial notice of this 10-K, as it is publicly available and not
    subject to reasonable dispute.  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540
28    F.3d 1049, 1064 n.7 (9th Cir. 2008); Fed. R. Evid. 201(b).

1    **Committee and Board of Directors, as well as its independent registered**
     **public accountants.**

2    Kim Decl., Ex. 1 at p. 72.

3         The October 20, 2009 10-K disclosed yet another improperly recognized revenue

4    transaction recorded in Q2 2007 in the amount of $2.1 million. *See* Kim Decl., Ex. 1 at

5    p. F-13. While the customer made payments on the sale in Q3 and Q4 of 2007, a $1.4

6    million balance remained at the end of 2007. The 10-K states that "[b]ased upon the

7    facts discovered in the Additional Findings, the Company concluded the sale did not

8    meet the criteria for revenue recognition, and therefore restated the transaction."  Kim

9    Decl., Ex. 1 at p. F-13. The effect of this restatement caused the Company's FY 2007

10   revenue to be overstated by $1.4 million more than alleged in the Complaint.  Including

11   this fifth improper transaction, revenue for FY 2007 was overstated by $9,435,000 or

12   63% rather than the $7,970,000 or 56% alleged in the Complaint.  *See* Kim Decl., Ex. 1

13   at p. 9, *cf.* ¶5c.  Including this transaction for Q2 2007, revenue for that period was

14   overstated by $9,682,000 or 292% rather than 103% alleged in the Complaint.  Kim

15   Decl., Ex, 1 at p. F-67 *cf.*, ¶5b.

16        The October 20, 2009 10-K also lists a number of "unresolved staff comments"

17   concerning NutraCea's improper revenue recognition practices, further demonstrating

18   the pervasiveness of the accounting fraud. Kim Decl., Ex. 1, at p. 37. Indeed, the

19   October 20, 2009 10-K represents the Company's third accounting review. *See* Kim

20   Decl., Ex. 1 at p. 4. More improper accounting practices may yet be disclosed.

21                                    **ARGUMENT**

22

23   **I.    PLAINTIFFS ADEQUATELY ALLEGE CLAIMS FOR SECURITIES**
         **FRAUD UNDER SECTION 10(B) OF THE EXCHANGE ACT AND RULE**

24       **10B-5**

25        To state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a

26   plaintiff must adequately allege that: (i) defendants misrepresented or concealed a

27   material fact; (ii) with scienter (i.e., a wrongful state of mind); (iii) in connection with

28   the purchase or sale of a security; (iv) upon which plaintiffs relied; (v) causing an

economic loss; and (vi) establishing a causal connection between the material misrepresentation and the loss (often referred to as loss causation). *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

## A. The Complaint Adequately Alleges Misstatements of Material Fact

None of the Defendants seek dismissal on the grounds that the Complaint fails to adequately allege falsity or materiality. Therefore, the Court must assume for the purposes of Defendants' motions that Plaintiffs have adequately alleged a false statement of material fact. *Metzler*, 540 F.3d at 1055, n. 1; *Tellabs*, 551 U.S. at 322 ("faced with a 12(b)(6) motion to dismiss a §10(b) action, courts must, … accept all factual allegations in the complaint as true.").  In any event, "the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made." *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004).[4]  Moreover, Defendants have admitted that NutraCea's prior financial results require restatement because of accounting errors. *E.g.,* ¶¶120, 122, 127.[5]

---

4  *See also In re Sipex Corp., Secs. Litig.*, 2005 WL 3096178 * 1 (N.D. Cal. Nov. 17, 2005) ("Sipex's own public admission that its financial reports for the period in question should not be relied upon and would be 'restated' meant that the as-issued reports were materially inaccurate under GAAP."); *In re Cylink Sec. Litig.*, 178 F.Supp.2d 1077, 1084 (N.D. Cal. 2001) (same); *In re DRDGOLD Ltd., Sec. Litig.*, 472 F.Supp.2d 562, 569 (S.D.N.Y. 2007) (same)

5  It is beyond dispute that Defendants' financial statements were false when made. The restatement adjustments are not the result of any subsequent *changed* circumstances or *change* in accounting principles. Restatements are only required for material accounting errors that existed at the time financial statements are prepared. ¶53 (citing Statement of Financial Accounting ("FAS") 154, ¶j. Changes in accounting principles or changes in accounting estimates do not result in a restatement of financial statements, rather such changes result in "retrospective application." ¶ 54 (citing FAS 154, B10). A restatement is "the process of revising previously issued financial statements to reflect the ***correction of an error*** in those financial statements."  ¶54 (citing FAS 154, ¶J). An accounting "error" is a term of art and results from, among other things, an error in recognition, measurement or mistakes in the application of

### B.  Plaintiffs Adequately Allege NutraCea's Scienter

The Complaint adequately alleges a strong inference of NutraCea's corporate scienter through cogent allegations demonstrating Edson and Crow's scienter. *In re CV Therapeutics Sec. Lit.*, 2004 WL 1753251 *10 (N.D. Cal. 2004), *citing, Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F. 3d 1424, 1433-35 (9th Cir. 1995). Accordingly, Plaintiffs incorporate by reference their memoranda in opposition to Edson and Crow's motion to dismiss as if fully set forth herein.

### C.  Plaintiffs Adequately Allege Loss Causation

Loss causation is the casual connection between the alleged misstatement or omission and a plaintiff's alleged loss. *Dura*, 544 U.S.at 342. "To adequately plead loss causation, a plaintiff must allege a causal connection between the defendant's material misrepresentation and the plaintiff's loss, that is, the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *In re UTStarcom, Inc. Sec. Litig.*, 617 F.Supp.2d 964, 976 (N.D. Cal. 2009) (quotation and citation omitted); *Metzler*, 540 F.3d at 1063. *Dura* does not require a fact-for-fact disclosure of the fraud in order to adequately plead loss causation, or mandate that the revelation of the fraud take a particular form. *Johnson v. Alijan*, 257 F.R.D. 587, 593 (C.D. Cal. 2009) (quotation and citations omitted). Rather, the complaint "'must allege … that the subject of the fraudulent statement or omission was the cause of the actual loss.'" *UTStarcom*, 617 F.Supp.2d at 976 (quoting *Lentell v. Merrill Lynch*, 396 F.3d 161, 173 (2d Cir. 2005)). "[L]oss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior

---

GAAP.   ¶ 55 (citing FAS 154, ¶ h). Under FAS 1544, errors result form (i) mathematical mistakes; (ii) mistakes in the application of GAAP; or (iii) oversight or misuse of facts that ***existed at the time*** the financial statements were prepared. ¶54. Here, it is undisputed that a "retrospective application" did not result in the restatement. *See e.g. Payne v. DeLuca*, 433 F.Supp.2d 547, 577-78 (E.D. Pa. 2006) (collecting cases and reviewing the similar accounting principles and explaining that restatements are required when financial statements are false when made).

statements." *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 633 F.Supp.2d 763, 823 (D. Ariz. 2009) (quoting *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp.2d 247, 283 (S.D.N.Y. 2008)); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 231 (5th Cir. 2009) (explaining that if a "complete" disclosure of the fraud were required, defendants could immunize themselves through a series of partial disclosures) (Sandra Day O'Connor (ret.) sitting by designation).

"[N]ormally it is inappropriate to rule on loss causation at the pleading stage" because it is critical at the proof stage and should be decided at trial. *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008) (quotation and citations omitted). Loss causation allegations are governed by the notice pleading requirements for Rule 8(a)(2) and are not subject to any heightened pleading requirement under Rule 9(b) or the PSLRA. *Metzler*, 540 F.3d at 1062. "So long as the complaint alleged facts that, if taken as true, plausibly establish loss causation, a Rule12(b)(6) dismissal is inappropriate." *Gilead*, 536 F.3d at 1057.

The Ninth Circuit explained that the pleading requirement is not a probability requirement, but only requires enough fact to raise a reasonable expectation that discovery will reveal evidence of loss. *Id.*; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009) ("plaintiff is only required to plead a plausible cause of action; we are not authorized or required to determine whether the plaintiff's plausible inference of loss causation is equally or more plausible than other competing inferences, as we must in assessing allegations of scienter under the PSLRA"). "A well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Gilead*, 536 F.3d at 1057. Moreover, to demonstrate loss causation "[a] plaintiff is not required to show that a misrepresentation was the sole reason for the investment's decline in value…" *In re Daou Sys.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (quotation and citation omitted).

1    The Company initially disclosed the accounting fraud in its February 23, 2009
2    press release. ¶¶120-24. This caused the NutraCea's stock price to drop – evidencing
3    loss causation. ¶125.  The announcement concerned the subject matter of the fraud, i.e.,
4    revealing details of improper revenue recognition practices which caused a substantial
5    decline in the Company's stock price. In the announcement, the Company revealed: (1)
6    an ongoing internal investigation being conducted by the Audit Committee through
7    outside counsel and forensic accountants: (2) the Company's financial statements for FY
8    2007 and Q2-Q4 2007 and the quarters for 2008 should no longer be relied upon and
9    had to be restated; (3) specific restatement adjustments for the $2.6 million related loan
10   transaction and the $2.0 million ITV "bill and hold" transaction; (4) an informal SEC
11   inquiry and request for production of documents "relating to a number of transactions,
12   including the transactions [that are being restated]"; and (5) "[f]urther investigation and
13   assessment may result in additional matters that require restatement for the periods
14   referenced …, or for additional fiscal periods." ¶¶120-126. The announcement caused
15   the Company's Stock to fall 17% on February 23, 2009 and to fall a further 14% the
16   following day. ¶125. These facts demonstrate loss causation for the alleged accounting
17   fraud.

18       The *Apollo* decision is instructive. The Court held that loss causation was
19   adequately alleged with respect to the alleged options backdating scheme through a
20   partial disclosure which was less precise and open-ended than the one in this case.
21   *Apollo,* 633 F.Supp.2d at 822-824. There, a disclosure stated "various deficiencies" were
22   identified in connection with the issuer stock option granting practices, but the
23   announcement stated that a "restatement might be possible." *Id.* Defendants argued that
24   the disclosure was not a revelation of the fraud because there was no restatement, which
25   would have been indicative of fraudulent options backdating. The Court found loss
26   causation was adequately alleged because the disclosure was a partial revelation of the
27   fraud. *Id.*

28

Here, the partial disclosure of the accounting fraud, i.e., improper revenue recognition, was more specific and definitive as to certain improper transactions. As explained above, the announcement states the Company's financial statements filed with the SEC and other public announcements for Q2-Q4 and FY 2007 and Q1-Q3 2008 should not be relied upon and must be restated. The announcement actually sets forth specific adjustments for the $2.0 million ITV "bill and hold" "and $2.6 million related loan transaction.

Defendants argue there is no loss causation with respect to the April 23, 2009 press announcement that revealed additional accounting errors with respect to two transactions (the $1.6 million and $5 million transactions) because the Company's stock price did not fall. This argument is without merit.  The lack of a stock drop from the April 23 announcement does not mean the *entire* accounting fraud has not caused any loss. While the announcement revealed two additional improper transactions that had to be restated and added FY 2006 and Q1 2007 to the list of financial statements that should not be relied upon, and which must be restated, the lack of a stock drop following this announcement merely shows that the market had already priced into the value of NutraCea stock on February 23, 2009 (the first disclosure) the expectation that additional accounting adjustments would be required. Indeed, the February 23rd announcement had warned that "[f]urther investigation and assessment may result in additional matters that require restatement for the periods referenced …, or for additional fiscal periods." ¶123.

*In re Bradley Pharmaceuticals, Inc. Sec. Litig.*, 421 F.Supp.2d 822 (D.N.J. 2006) is also instructive. There, plaintiffs alleged that the company made misstatements about a sham sales transaction. Plaintiffs alleged a partial revelation through an announcement of a SEC investigation into the company's revenue recognition and other accounting issues. Defendants argued that because the company's stock price did not fall when the actual restatement of the company's financial statements were issued, there was no loss

causation. *Id.* at 827-829. The court rejected this argument because the market activity between the date of disclosure of the SEC investigation and the date of the restatement announcement indicated that the market had already corrected the company's stock price in reaction to the SEC announcement. Here, like *Bradley*, there was a significant market reaction to a partial corrective disclosure. On February 23, 2009, when the announcement was issued, the Company's Stock traded over 1.9 million shares, and the Company's Stock fell 17%. The following day, the Company's Stock fell another 13.8% and traded over 1.3 million shares.  *See* Kim Decl., Ex. 3.[6] Like *Bradley*, on April 23, 2009 when additional details of the fraud were announced (after market-close) NutraCea's stock's trading volume merely moved from 299,600 shares traded on April 23 to 310,600 shares traded on April 24. While NutraCea Stock rose from $.20 to $.22 on April 24, the next trading day the price of the Stock went right back down to $.20.. An insignificant 2 cent move up followed by an insignificant 2 cent drop. *Id.*  Thus, like in *Bradley*, NutraCea's volume and price movement on April 23 does not preclude loss causation to the alleged misstatements in this case. *See also In re Seitel, Inc. Sec. Litig.*, 447 F.Supp.2d 693, 712 (S.D. Tex. 2006) (rejecting argument that stock price increase when restatement adjustments were issued, as a matter of law, precludes a finding of loss causation as to revenue and earnings accounting fraud under *Dura* ); *In re Motorola Sec. Litig.*, 505 F.Supp.2d 501, 540 (N.D. Ill. 2007).

### D.  The Complaint Adequately Alleges Reliance Based on Efficient Market

Plaintiffs rely on the fraud-on-the-market presumption of reliance under *Basic v. Levinson*, 485 U.S. 224, 243-49 (1988). This presumption is based on the assumption that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.* at 247. Thus, misleading statements will defraud purchasers of securities even if the purchasers do not directly rely on the

---

6  The Court can take judicial notice of publicly reported stock prices and volume of the issuer's stock.  *See Metzler*, 540 F.3d at 1064, n. 7.

misstatements. *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999). To benefit from the presumption, the subject securities must have traded on an efficient market. *Basic*, 485 U.S. at 246; *Binder*, 184 F.3d at 1064-65.

The Ninth Circuit uses the "*Cammer*" factors to determine whether an efficient market is established. *See Binder*, 184 F.3d at 1064 (citing *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989)). The *Cammer* factors are as follows: (1) weekly volume of trades in the security; (2) the extent of analyst coverage; (3) arbitragers and market-makers in the security; (4) whether the company is eligible to file a registration statement on form S-3; and (5) facts showing a cause-and-effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *Cammer*, 711 F. Supp. at 1286-87.

Generally, determining whether a security was traded on an efficient market is not appropriate on a motion to dismiss, as such issues are more properly addressed at class certification through expert discovery. *See Batwin v. Occam Networks, Inc.*, 2008 WL 2676364 (C.D. Cal. July 1, 2008) (declining to address challenge to efficient market allegations; determining issues is appropriate at class certification); *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 305 n.174 (S.D.N.Y. 2005) (citations omitted); *see also Levine v. SkyMall, Inc.*, 2002 WL 31056919 (D. Ariz. May 24, 2002) (considering efficient market at class certification with benefit of expert declarations).

"[T]he question on a motion to dismiss is not whether plaintiff has proved an efficient market, but whether he has pleaded one." *Hayes v. Gross*, 982 F.2d 104, 108 (3d Cir. 1992) (explaining allegations addressing *Cammer* factors adequately state market efficiency on Rule 12 motion); *In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F. Supp.2d 751, 763 (N.D. Ohio 2003) (finding efficient market for Bulletin Board stock on motion to dismiss because *Cammer* factors alleged), *cf. Raymond v. Merrill Lynch, Pierce, Fenner & Smith*, 1991 WL 520500, at *4 (C.D. Cal. Aug. 5, 1991) (dismissing complaint because it did not allege a single *Cammer* factor); *In re*

*Turbodyne Techs., Inc. Sec. Litig.*, 2000 WL 3396113, at *14 (C.D. Cal. Mar. 15, 2000) (pleading two *Cammer* factors insufficient to state a claim).

Here, Plaintiffs have more than adequately alleged market efficiency by pleading facts demonstrating that all five *Cammer* factors have been met. As to the <u>first factor</u>, the Complaint alleges that an average of 5.25 million shares of NutraCea Stock were traded on a weekly basis, and that 3.7% of all outstanding shares were traded on a weekly basis. ¶155b.  This high trading volume in NutraCea stock demonstrates a "strong presumption" the market is efficient. *Levine*, 2002 WL 31056919, at *4 (explaining 2% presents a "strong presumption" of efficiency and 1% justifies a "substantial presumption"). Even if the Court were to discount by one-half for double-counting,[7] that would yield a percentage of 1.85%, which would still create a "strong presumption."

As to the <u>second factor</u>, the complaint alleges that NutraCea was covered by several stock analysts and that at least two such analysts issued reports about NutraCea. ¶155e. Moreover, at least eight investment advisory companies actively followed NutraCea's common stock and least four other institutional investors bought, sold, or held NutraCea common stock. ¶155e-f. These facts weigh in favor of market efficiency. *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 508 (S.D. Tex. 2004) (crediting plaintiff's expert's assertion that "there is a general understanding that a high level of institutional interest in a security serves to increase the efficiency of the market"); *S.E.C. v. Gane*, 2005 WL 90154, at * 12 (S.D. Fla. Jan. 4, 2005) (institutional investors is a factor that is relevant in determining market efficiency); *cf. In re Nature's Sunshine Product's Inc. Sec. Litig.*, 251 F.R.D. 656, 662-63 (D. Utah 2008) (four analysts support a finding of an efficient market but two analysts issuing reports does not).

---

7  Defendants cite no authority to suggest that discounting for *double-counting is required for NutraCea's* trading during the Class Period. Thus, the Court should accept as true the 3.7% amount alleged in the Complaint.  *See Metzler*, 540 F.3d 1049, 1055, n. 1 (on motion to dismiss must accept all well plead allegations as true).

As to the <u>third factor</u>, there were at least 30 market makers in NutraCea's Stock at any given time during the Class Period. ¶155f. The high number of market makers weighs in favor of market efficiency. *See Levine*, 2002 WL 31056919, at * 6 (22 market makers support finding of market efficiency); *Cheney v. Cyberguard Corp., 213* F.R.D. 484, 500 (S.D. Fla. 2003) (finding that 15-19 market makers is "significant" and "appears to support a determination of [market] efficiency") (citation omitted); *Cammer*, 711 F.Supp. at 1283, n. 30 (11 market makers).[8]

As to the <u>fourth factor</u>, NutraCea was eligible to file Form S-3 Registration Statements and *did so* in connection with its April 2008 offering.¶155c. Indeed, NutraCea first filed a Form S-3 with the SEC on January 29, 2008 and again on March 28, 2008.  *See* Kim Decl., Ex. 4. The eligibility to file a Form S-3 with the SEC is a factor that Courts have considered "extremely important" in determining whether a company's stock trades in an efficient market. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2006 WL 216887, at *7 (S.D.N.Y. Aug. 1, 2006); *Levine*, 2002 WL 31056919, at *6; *Griffin v. GK Intelligent Sys. Inc.*, 196 F.R.D. 298, 304 (S.D. Tex. 2000). While Defendants argue the requirements for filing a Form S-3 were amended prior to NutraCea's filing a Form S-3, Defendants fail to cite a single case where this change impacts the importance of the S-3 in evaluating this *Cammer* factor. *See Bombardier*,   2006 WL 216887, at *7, n.95 (explaining the S-3 factor

---

8   NutraCea cites *O'Neill v. Appel*, 165 F.R.D. 479, 501-02 (W.D. Mich. 1996) for the proposition that "twenty-eight market makers are insufficient" on a class certification motion. *O'Neill* is not binding on this Court and is inapposite. The court merely explained that "the mere number of market makers, without much more information" is not very helpful.  *Id.*, at 502. Moreover, the decision to find an inefficient market turned on the fact that "the weekly trading volume of Embrace common stock was *miniscule to nonexistent* for most of the class period" (at 501); and the stock was not eligible to file an S-3 at anytime (at 502). Defendants' citation to *Krogman v. Sterritt*, 202 F.R.D. 467 (N.D. Tex. 2001) is likewise unhelpful, as it was decision on class certification and involved the Court's analysis of the market maker criteria in light of expert evidence submitted.  *Krogman*, 202 F.R.D. at 475-76.

remains extremely important even though at the time of *Cammer*, it required $150 million public float and 36 months of continuous SEC reports, compared to $75 million public float and 12 months of continuous reporting requirement in effect). The 2008 amendments allowed issuers with a public float less than $75 million to utilize the Form S-3, but kept all other requirements for an S-3 filing the same, i.e., the issuer filing SEC reports continuously for 12 months. Here, when NutraCea filed its Form S-3, its public float was on average well over $130 million, and it had continuously filed its Form S-3. *See* Kim Decl., Ex. 4.

As to the <u>fifth factor</u>, the Complaint alleges that unexpected news about NutraCea was rapidly reflected in and incorporated into the Company's Stock price. ¶155g. This is the most important *Cammer* factor. *Levine*, 2002 WL 31056919, at * 8 (explaining that this factor "is most important factor" in determining market efficiency and "weighs heavily in favor of finding … [the] stock was traded on an efficient market…") (citation omitted). Here, when the truth of the misstatements was revealed on February 23, 2009, the Company's stock fell 29%. ¶125. At the pleading stage this certainly demonstrates a cause and effect relationship "between unexpected corporate events or financial releases and an immediate response in the stock price." NutraCea, without citing any legal authority, claims that there is no efficient market because the Company's stock "fluctuated vastly, but not in reaction to any news." Nutra. Mem. at p. 13:1-3. NutraCea cites to the March 9, 2009 and March 10, 2009 stock price movement of 39% to the upside. The Arizona District Court rejected a similar argument in *Levine,* where it was argued that "SkyMall stock's wild gyrations during the two-and-a-half trading days of the putative Class Period when no new fundamental-relevant information entered the market are even-more compelling evidence of market inefficiency." *Levine v. SkyMall, Inc.*, 2002 WL 31056919, at * 8.

In any event, there was unexpected news about the Company issued on the date defendants claim the stock price moved any news. On March 10, 2009, the Company

filed a Form 8-K with the SEC announcing that Edson had resigned as of March 9, 2009 and that a new CEO had been appointed.  *See* Kim Decl., Ex. 5.[9] Notably, the market viewed Edson's departure from the Company as positive news causing the Company's stock price to rise.

NutraCea also cites to the downward trend preceding the February 23, 2009 announcement, however, during that same period of time, the Russell 2000 index of small cap companies was also falling in a similar trend line.[10]  *See* Kim Decl., Ex. 6.[11] This argument further exemplifies that Defendants' inexpert argument, which is factually incorrect and unsupported by any empirical or other reliable expert evidence, is inappropriate on this motion to dismiss.[12]

Defendants contend that because NutraCea's Stock traded on the NASDAQ Bulletin Board, it could not possibly have been traded in an efficient market.[13]   The Ninth Circuit has rejected the exact same argument. In *Binder*, the Ninth Circuit explained that what is relevant is not what exchange a particular stock is traded on, but

---

9   The Court can take judicial notice of the Company's March 10, 2009 SEC 8-K filing. *Metzler*, 540 F.3d at 1064 n.7; Fed. R. Evid. 201(b).

10   With respect to the fifth *Cammer* factor an expert will consider the stock price movement compared to, among other things, market and peer group stock indices. *See e.g. Schleicher v. Wendt*, 2009 WL 761157, at * 5 (S.D. Ind. Mar. 20, 2009); *Wagner v. Barrick Gold*, 251 F.R.D. 112, 120 (S.D.N.Y. 2008).

11   The Court can take judicial notice of stock market index prices.  *See Terra Ins. Co. v. New York Life Inv. Mang't; LLC*, 2009 WL 2365883, at * 3 (N.D. Cal. Jul. 30, 2009); *In re Keithly Instruments, Inc. Sec. Litig.*, 268 F.Supp.2d 887, 994 (N.D. Ohio 2002).

12   *See e.g., Levine,* 2002 WL 31056919, at * 7 - * 9 (addressing fraud-on-the-market and efficient market at class certification and considering expert declarations on market efficiency); *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 579 (N.D. Cal. 2009) (same); *Conn. Retirement Plans and Trust Funds v. Amgen*, 2009 WL 2633743, at * 12 (C.D. Cal. Aug. 12, 2009) (same); *In re HiEnergy Techs. Inc. Sec. Litig*, 2006 WL 2780058, at * 5 (C.D. Cal. Sept. 26, 2006) (considering efficient market of bulletin board stock at class certification and considering expert declaration).

13   NutraCea's stock was delisted from the Nasdaq Bulletin Board on May 5, 2009, after the close of the Class Period.  Therefore the fact that it is now traded on the OTC Pink Sheets is irrelevant to this action.

rather, whether the *Cammer* factors have been met. *Binder*, 184 F.3d at 1064-65 (collecting cases). Indeed, numerous courts have found an efficient market with securities traded on the Bulletin Board or the "Pink Sheets." *See e.g. HiEnergy,*, 2006 WL 2780058, at *1, 5 (finding efficient market based on expert declaration, and certifying class of Bulletin Board stock); *Empyrean*, 255 F. Supp.2d at 751 (bulletin board stock on motion to dismiss); *Hoexter v. Simmons*, 140 F.R.D. 416, 419 (D. Ariz. 1991) ("The court agrees with plaintiffs that the mere fact that the Valley National shares were traded on the OTC market rather than on a national exchange does not prevent certification of the Class"). As explained above, the Complaint alleges each *Cammer* factor sufficiently to demonstrate market efficiency on a motion to dismiss.

## II.   THE COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER A.R.S. § 44-1991(A)(3) AND § 44-2003(A)

For the reasons set forth in Plaintiffs' memorandum in opposition to Crow's motion to dismiss, Plaintiffs have adequately alleged their Arizona securities claims against NutraCea.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion and grant any further or other relief the Court deems just and proper.

Dated: November 4, 2009

Respectfully submitted,

**THE ROSEN LAW FIRM P.A**.

/s/ Phillip Kim
Phillip Kim (*pro hac vice*)
Laurence Rosen (*pro hac vice*)
Timothy Brown (*pro hac vice*)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827

Lead Counsel for Plaintiffs

1

2   **TIFFANY & BOSCO, P.A.**

3   Richard G. Himelrick (#004738)
    J. James Christian (#023614)

4   Third Floor Camelback Esplanade II

5   2525 East Camelback Road
    Phoenix, Arizona 85016-4237

6   Telephone: (602) 255-6000
    Fax: (602) 255-0103

7

8   Liaison Counsel for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**CERTIFICATE OF SERVICE**

I, Phillip Kim, hereby declare under penalty of perjury as follows:

I am attorney with the Rosen Law Firm, P.A., with offices at 350 5th Avenue, Suite 5508, NY, NY 10118.  I am over the age of eighteen.

On November 4, 2009, I electronically filed the following PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT NUTRACEA'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on November 4, 2009

_____/s/ Phillip Kim_____