**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com
jjc@tblaw.com

Liaison Counsel for Plaintiffs

**THE ROSEN LAW FIRM P.A**.
Phillip Kim (*pro hac vice*)
Laurence Rosen (*pro hac vice*)
Timothy Brown (*pro hac vice*)
350 Fifth Avenue, Suite 5508
New York, NY 10118
Telephone: (212) 686-1060
Fax: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com
tbrown@rosenlegal.com

Lead Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| JENNIFER BURRITT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs, <br> vs. <br><br> NUTRACEA, BRADLEY D. EDSON, TODD C. CROW, AND DAVID BENSOL, <br><br> Defendants. | No.  CV-09-00406-PHX-FJM <br> (**Consolidated**) <br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT TODD C. CROW'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT |

0

# TABLE OF CONTENTS

STATEMENT OF FACTS………………………………………………………………...…..1

ARGUMENT………………………………………………………………………………...…1

I.    PLAINTIFFS ADEQUATELY ALLEGE CROW'S SCIENTER……...….…….1

        A. NutraCea's October 20, 2009 10-K Demonstrates Crow's Scienter……....1

        B. The *Magnitude* of the Accounting Fraud Supports a Strong Inference of Scienter……………………………………….……………………..….4

        C. Under *South Ferry* and its Progeny, Each Defendant Knowingly or Recklessly Made Misstatements……………….………....……………….4

        D. The Confidential Witness Allegations Support Crow's Scienter…………...6

        E. Additional Scienter Allegations……………………………………..…….6

        F. Defendants Are Not Saved by *Zucco Partners v. Digimarc*…………...…10

II.   PLAINTIFFS ADEQUATELY ALLEGE CROW'S CONTROL PERSON LIABILITY UNDER SECTION 20(A) OF THE EXCHANGE ACT……....…11

III. THE COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER A.R.S. § 44-1991(A)(3) AND § 44-2003(A) ………….………….…….……..…..…11

        A. Claims under 44-1991(A)(3) Are Governed by Strict Liability………..…11

        B. Defendants Violated Arizona Securities Law Even If They Did Not Dispose of Any Securities Or Make an Offer to Plaintiffs………..…..…13

        C. Defendants Participated in the Sale of Securities and Induced Plaintiffs To Purchase Securities…...………....……...…….….……...15

        D. Defendants Are Liable Regardless of Privity or a Lack Thereof…..……16

        E. The Complaint Adequately Alleges Claims under A.R.S. § 44-1999(B)……...…………………….…..…….…17

CONCLUSION………………………….....…………...….…………..…..….…..17

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*Aaron v. Fromkin*,
5
  196 Ariz. 224 (App. 2000)……………………..………....…….11, 12, 15

6

*Aaron v. SEC,*
7
  446 U.S. 680 (1980)…………………………………...……...……12 n.6

8

*Carrington v. Ariz. Corp. Comm'n*,
9
  199 Ariz. 303 (App. 2000)………………………………...…………12 n.6

10

*Eastern Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n,*
11
  206 Ariz. 399 (App. 2003)………………………………….……….....……15

12

*Garvin v. Greenbank*,
13
  856 F.2d 1392 (9th Cir. 1988)……………………...….…………….11

14

*Grand v. Nacchio,*
15
  2009 WL 3103761 (Ariz. App. Div. 2, Sept. 29, 2009) ……...………16, 16 n.9

16

*Howard v. Everex Sys.*,
17
  228 F.3d 1057 (9th Cir. 2000)……………….…………………………….9

18

*In re Business Objects S.A. Sec. Litig.,*
19
  2005 WL 1787860 (N.D. Cal. July 27, 2005)……….……………….7 n.3

20

*In re Countrywide Fin. Corp. Sec. Litig.,*
21
  588 F.Supp.2d 1132 (C.D. Cal. 2008) ……………….............………..4

22

*In re Daou Sys.*,
23
  411 F.3d 1006 (9th Cir.2005)……..…...……………………….....……4, 9

24

*In re Gupta Corp. Sec. Litig.,*
25
  900 F. Supp.2d 1217 (N.D. Cal. 1994) …………………..…..…………...3

26

*In re Hansen Natural Corp. Sec. Litig*
  527 F. Supp. 2d 1142 (C.D. Cal. 2007)…………………………...……8, 9 n.4
27

28

*In re Impax Labs., Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS, at * 26- *27 (N.D. Cal. Jul. 18, 2007) ………......……...7

*In re Lattice Semiconductor Corp. Sec. Litig.*,
    2006 WL 538756 (D. Or. Jan. 3, 2006)……………………………...……...…..8

*In re New Century,*
    588 F. Supp. 2d 1206 (C.D. Cal. 2008) …………………………...……………8

*In re OCA, Inc. Sec. and Deriv. Litig.*,
    2006 WL 3747560 (E.D. La. Dec. 14, 2006)…...………………………...……8

*In re Syncor Intern. Corp. Sec. Litig.*,
    327 F. Supp. 2d 1149 (C.D. Cal. 2004)…………….……………………….…7

*In re Time Warner, Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993)...…………………..…..…….…..…………...……9

*In re UTStarcom, Inc. Sec. Litig.*,
    617 F.Supp.2d 964 (N.D. Cal. 2009)...……………………….....................……7

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F.Supp.2d 1148 (C.D. Cal. 2007) ……...………………….…...…….9 n.4

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
    927 F.Supp. 1297 (C.D. Cal. 1996) …………………….……………….....….8

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008)…………………………...……………....….1

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)..………………………...……………….….7

*Orthol#ic Corp. v. Columbia/HCA Healthcare Corp.*,
    2002 WL 1331735 (D. Ariz. Jan. 07, 2002)………………………...….…...13

*Reiger v. Price Waterhouse Coopers LLP,*
    117 F.Supp.2d. 1003 (S.D. Cal. 2000) ….………………...……….....….4

*Rosier v. First Fin. Capital Corp.*,
    181 Ariz. 218 (App. 1994)……………………..……………...........………11

*Siporin v. Carrington*,
    200 Ariz. 97 (App. 2001)…………………………...……………………15

*Siracusano v. Matrixx Initiatives, Inc.*,
    -F.3d-, 2009 WL 3448282, (9th Cir. Oct. 28, 2009) )……………..……….....2, 10

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008)..…………..………....................................1, 4, 5, 8 n.3

*Standard Chartered PLC v. Price Waterhouse*,
    190 Ariz. 6 (App. 1996)…..…………………………………....…..14, 15

*State v. Gunnison*,
    127Ariz. 110 (1980)…………….……..….....................................................11

*State v. Superior Court*,
    123 Ariz. 324 (1979)………………………..….……………11, 14, 15, 16, 17

*Strom v. Black*,
    22 Ariz. App. 102 (App. 1974)..……………………………………16

*Trimble v. Am. Sav. Life Ins. Co.*,
    152 Ariz. 548 (App. 1986)……………………...….………………………15-16

*Trump v. Badet*,
    84 Ariz. 319 (1958)……………….……….…....…………….……...14-15, 17

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)…………….…………………………....…..……10

# STATUTES

15 U.S.C.A. §§ 77K, 77 l(2) …………………………………..……15

15 U.S.C.A. §§ 78j(b), 78r, 78bb, 78bb(a)………………………………………15

A.R.S. § 44-1901…………………………………………………………………16

A.R.S. § 44-1991……………………………..............……………..…11, 13, 14, 15

A.R.S. § 44-1991(A)……………………………………………………11, 13, 14

A.R.S. § 44-1991(A)(1) ……………………………..............……………………13

A.R.S. § 44-1991(A)(2)…………………………………………………11, 13

A.R.S. § 44-1991(A)(3) ……………………………..............…………11, 12, 13, 17

A.R.S. § 44-1992…………………………………………………………………13

A.R.S. § 44-1999(B) ………………………………………………..…………17

A.R.S. § 44-2001………………………………………………………………14

A.R.S. § 44-2002………………………………………………..............………14

A.R.S. § 44-2003……………………………..............………………14, 15, 17

A.R.S. § 44-2003(A)…………………….…………………………11, 13, 14, 16, 17

A.R.S. § 44-2082(B)……………………………………..…………………12, 13

Securities Act of 1933, §§ 11, 12(2) ………………………..……………………15

Securities Act of 1933§ 17(a) ……………………………..…………………13

Securities Act of 1933§ 17(a)(3) …………………………........…………………12 n.6

Securities Act of 1934 §§ 10(b), 18, 28, 28(a)…………………………………15

Securities Act of Arizona, ch. 18, § 20, 1951 Ariz. Secs. Laws 46, 75……….....……12 n.7

v

Lead Plaintiff Harvey Pensack, and named plaintiffs Jennifer Burritt and Jose Medrano (collectively "Plaintiffs"), individually and on behalf of all other persons similarly situated submit this memorandum in opposition defendant Todd C. Crow's ("Crow") motion to dismiss the First Amended Consolidated Class Action Complaint (the "Complaint").   Plaintiffs join, adopt and incorporate the arguments, made in Plaintiffs' separate memoranda in opposition to the motions to dismiss filed by defendants NutraCea or the "Company" and Bradley Edson ("Edson").

**STATEMENT OF FACTS**

Plaintiffs incorporate by reference the statement of facts set forth in Plaintiffs' opposition to NutraCea's motion to dismiss, as if fully set forth herein.

**ARGUMENT**

## I.   PLAINTIFFS ADEQUATELY ALLEGE CROW'S SCIENTER

As discussed more fully in the Plaintiffs' memorandum in opposition to Edson's motion dismiss, the Complaint adequately alleges a strong inference of both Edson and Crow's scienter with particularized facts that reflect a substantial degree of intentional or conscious misconduct, i.e. deliberate recklessness. *See South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008), *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1066. (Scienter is adequately alleged when a complaint "contain[s] allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statement when made.").

### A. NutraCea's October 20, 2009 10-K Demonstrates Crow's Scienter

NutraCea's October 2009 10-K demonstrates Crow's fraudulent conduct and knowledge of the true details of the restated transactions.   As explained in Plaintiffs' opposition to Edson's motion to dismiss, the 10-K, together with Crow's public statements to investors demonstrate that both Crow and Edson were the "Senior Management" that withheld information from, and provided improper explanations and supporting documentation to, "the Company's Audit Committee and Board of

1

Directors, as well as its independent registered public accountants." Kim Decl., Ex. 1 at p. 72.    Indeed, the October 2009 10-K does not state that information was withheld from, and false explanations and documentation were provided *to* senior management, such as Crow and/or Edson.  Certainly, if that were the case, the Company would have included that in their 10-K, especially with this lawsuit pending.

Crow's knowledge of the fraud is further corroborated by his review of the Company's internal controls conducted in connection with the Company's FY 2007 annual report. *See* Kim Decl., Ex. 2 at p. 36. During this review Crow (and Edson) identified material weaknesses concerning, among other things, revenue recognition, which resulted in significant adjustments to the Company's quarterly and year end results for 2007. *See* Kim Decl., Ex. 2 at p. 37. Crow promised to implement a remediation plan and personally ensure proper accounting treatment for all transactions over $250,000.  *See* Kim Decl., Ex. 2 at p. 37-38.  As part of the remediation process, the Board also enhanced its documentation requirements and required Crow to provide analyses when reviewing significant transactions, to improve accounting and disclosure controls.  *See* Kim Decl., Ex. 2 at p. 37-38.  Crow clearly had knowledge of these major accounting transactions at issue here.

Additionally, Crow's knowledge of the Company's major transactions is demonstrated by his false reassurance during the Company's Q3 2007 conference call, when referring to the $2.6 million related loan transaction, where he stated that the $800,000 reserve taken on this transaction resulted from a "slow paying" customer. ¶¶105, 150. This false description of the transaction supports a strong inference of scienter, because it demonstrates Crow's knowledge of the true details of the transaction, i.e. that it was funded by a secret loan from Ike Lynch and that the evidence of collectability was false. At minimum, this false reassurance was reckless because Crow had a duty to be fully informed before he opined on the $2.6 transaction.  ¶¶9, 149. *See Siracusano v. Matrixx Initiatives, Inc.*, -F.3d-, 2009 WL 3448282, at * 13 (9th

Cir. Oct. 28, 2009) (by choosing to speak, the person has a duty not to mislead and be fully informed, failure to do so, supports a strong inference of scienter).

Crow also suggests that this statement was not knowingly false or material at the time made.[1] He misstates the basis for the restatement of the transaction. Under GAAP, restatements are necessary only to correct *accounting errors*, and are not required for adjustments based on changed circumstances or changes in accounting principles or retrospective applications. ¶¶53-55.[2]  Crow's suggestion the $2.6 million related loan transaction was not false when made is wrong and contradicts GAAP. *Id.* Moreover, the misstatement was material because the $2.6 million is nearly a third of the overstatement and would have turned Q2 2007 net income to a net loss.  Certainly, this was information that would have altered the total mix of information available to a reasonable investor.  ¶104.  Indeed, the false reassurance was issued in response to an investor inquiry.  *See e.g. In re Gupta Corp. Sec. Litig.*, 900 F. Supp.2d 1217, 1231 (N.D. Cal. 1994) ("The materiality of a $1.1 million correction to revenue, which causes earnings to be restated from a profit of $520,000 to a loss of $250,00, and which represents more than 5 percent of total revenues is beyond question.")

Lastly, Crow suggests that because the Company later determined that the evidence of the customer's ability to pay was false, the Court should infer that Crow did not know this fact, even though the customer's inability to pay was existed at the time the transaction was recorded.  Subsequent admissions of NutraCea show that "Senior Management" bore responsibility for withholding and providing false information to the Board, Audit Committee and the Company's auditors (Kim Decl., Ex. 1 at p. 72); In particular providing false evidence of collectability for this transaction. ¶97.

---

1   Crow does not move to dismiss on the ground that Plaintiffs have not adequately alleged the NutraCea's financial statements were materially false and misleading and that the financial statements are attributable to him.

2  A further explanation of this point is set forth in Plaintiffs' memorandum in opposition to NutraCea's motion to dismiss, which Plaintiffs hereby incorporate by reference as fully set forth herein.

**B. The *Magnitude* of the Accounting Fraud Supports a Strong Inference of Scienter**

Crow's citation to *Reiger v. Price Waterhouse Coopers LLP*, 117 F.Supp.2d. 1003, 1013 (S.D. Cal. 2000) for the proposition that the magnitude of a restatement cannot provide evidence of scienter is unwarranted. *Reiger* was issued five years prior to *Daou* in which the Ninth Circuit explicitly contradicted Reiger and did consider the magnitude of the restatement in evaluating scienter allegations. *In re Daou Sys.*, 411 F.3d 1006, 1023 (9th Cir. 2005). *Reiger* is also distinguishable because it involved a case attempting to hold an *auditor* liable for a Company's alleged accounting fraud. *Id.*, at 1013. *Reiger* was also recently criticized in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1197 (C.D. Cal. 2008) (explaining that the *Reiger* decision's "remarkable deference" to auditors was "suspect.").

**C. Under *South Ferry* and its Progeny, Each Defendant Knowingly or Recklessly Made Misstatements**

Defendants' primary argument is that the Complaint fails to allege specifically how Crow and Edson knew that their misstatements about the Company's revenue recognition and net income were false. Defendants knowingly or were reckless issued the false financial statements as evidenced by:

- the magnitude of the restatements and the straightforward violation of GAAP and Company accounting policies;

- the nature and timing of the transactions, i.e. three of transactions are indicative of sham transactions, the fourth transaction involved a fraudulent "bill and hold" letter, and that transactions occurred and were recorded near the end of the reporting periods and achieved "record" results;

- Crow and Edson's false reassurances;

- NutraCea's admissions in the October 20, 2009 10-K that states that restatement was the result of "withholding information" and "providing false

explanations" to the Company's Board, Audit Committee and auditors and the statement that the *behavior* of Senior Management resulted in this conduct. *See* Kim Decl., Ex. 1, p. 72-73; and

- • Crow and Edson's promised (but failed) remediation plan in the 2007 10-K concerning larger revenue transactions. *See* Kim Decl., Ex. 2 at p. 36-38. The Defendants had specific responsibility for assuring revenue on large transactions complied with GAAP.

Even if the Court finds any one of these allegations alone do not adequately show Crow's knowledge of the fraud, the Court should deny the motions to dismiss because it may consider these allegations together with the "core-operations" inference: "it may be inferred that facts critical to a business's 'core operations' or important transactions are known to key company officers. . ." *South Ferry,* 542 F.3d at 781. The Court should make the core-operations inference because it would be *absurd* to believe that Crow or Edson did not know the true details of the these transactions or the simple accounting rules that should have been applied, *i.e.* revenue cannot be recorded on consignment sales, revenue is to be recorded when earned, revenue is to be recorded when product is shipped and risk of loss has passed, and when the customer has the ability to pay. ¶¶ 57-59.

During the Class Period NutraCea was a small company and a majority of the Company's sales and revenue were derived from a handful of customers. ¶2. The restatements concern revenue earned from NutraCea's small number of customers, which make up the majority of its sales, and where the overstatements were by as much as 292% and 425%, the circumstances are sufficiently unusual that, even were there no other allegations showing scienter, under *South Ferry* the motions to dismiss must be denied. *South Ferry*, 542 F.3d at 785 ("in some unusual circumstances, the core operations inference, without more, may raise the strong inference required by the PSLRA.").

**D.  The Confidential Witness Allegations Support Crow's Scienter**

Crow would have the Court believe that because the confidential witness allegations concerning the $1.6 million Famous Discoveries transaction and $2 million "bill and hold" transaction do not mention his name, the allegations do not support an inference of scienter. It is implausible to believe that Crow –NutraCea's CFO-- was not aware of the consignment nature of the Famous Discoveries transaction described by the confidential witnesses. Even though, CW2 negotiated it with Edson ¶¶76, 78, 139. Based on the size and timing of the sale, Crow as CFO was certainly told by Edson or knew the details of the transaction when the revenue was improperly recorded. The Famous Discoveries sale occurred and was recorded in December 2006. At that time, Crow would have been busy preparing for the Company's internal audit. The transaction accounted for nearly half of the Q4 2006 revenue and turned Q4 2006 from a profit to a loss. ¶86.  If Crow did not know as he suggests, this merely strengthens the inference of scienter against Edson, as it would mean Edson concealed the terms of the transaction from Crow.

Likewise, it is implausible that Crow was not aware of the true details of the $2.6 million related loan transaction because the $2.6 million accounted for nearly a third of the overstatement and would have turned Q2 2007 net income to a net loss. ¶104. Moreover, there is no reason to believe that the "NutraCea executive" (¶113) was not Crow, as he was the CFO of the Company; particularly given the admissions in October 2009 10-K about senior management providing improper explanations and documentation to the auditors and audit committee.

**E.     Additional Scienter Allegations**

<u>Employee Departures</u>: The musical chairs played by NutraCea's CFOs and Crow's resignation also support an inference of scienter. During the Class Period, two replacement CFOs either resigned or refused to start just before they were required to sign the Company's financial statements and Sarbanes-Oxley certifications. Likewise,

1  Crow's ultimate successor Olga Hernandez-Longan, also "resigned" effective July 31,

2  2009—thus avoiding signing any financial statements or Sarbanes-Oxley certifications.

3  ¶148.

4     Moreover, Edson's purported "resignation" supports an inference of scienter

5  because he was forced to resign in the wake of the accounting fraud. The Court merely

6  has to look at his severance package to determine that Edson was forced out of the

7  Company because he forewent over $410,000 in cash compensation by "resigning" and

8  potentially an additional $550,000 in bonuses had he been terminated without cause or

9  resigned with good reason. ¶147f. It is illogical to believe that Edson would have left

10  almost $1.0 million of cash compensation on the table by voluntarily resigning – unless

11  he was really forced to resign under threat of termination and complete loss of any

12  severance payment.   Taken collectively, these allegations add another piece to the

13  scienter puzzle. *See In re UTStarcom, Inc. Sec. Litig.*, 617 F.Supp.2d 964, 975-76 (N.D.

14  Cal. 2009) ("Although proximate resignations of high-ranking officers or directors do

15  not alone support scienter, 'when corporate reshuffling occurs in tandem of financial

16  restatements, these changes add one more piece to the scienter puzzle.'") (quoting *In re*

17  *Impax Labs., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS, at * 26- *27 (N.D. Cal. Jul. 18,

18  2007).

19     SEC Investigation: The SEC's formal investigation of the Company supports a

20  strong inference of scienter. The Company admitted that the investigation focuses

21  specifically on the transactions that are the subject of the restatement and that form the

22  basis of the securities fraud claims herein. *See In re Syncor Intern. Corp. Sec. Litig.*,

23  327 F. Supp. 2d 1149, 1162 (C.D. Cal. 2004). Indeed, the Ninth Circuit considers

24  administrative investigations and settlements in determining scienter. *America West*,

25  320 F.3d at 942.[3]

26  _____

27  3  Defendants incorrectly rely on *In re Business Objects S.A. Sec. Litig.*, in which the
    court found that an SEC investigation did not infer scienter because the complaint did

28  not even allege GAAP violations, but only "the existence of a 'risk' . . . [of] GAAP

    Sarbanes-Oxley Certifications (SOX): Crow's and Edson's SOX certifications support a strong inference of scienter because they both attested to the accuracy of the financial statements, when in fact, they were aware or should have been aware of sham transactions as detailed above. Under these circumstances, the SOX certifications support an inference of scienter. *See In re Lattice Semiconductor Corp. Sec. Litig.*, 2006 WL 538756, at *17-18 (D. Or. Jan. 3, 2006) (knowledge of management override of accounting controls evidences scienter where management signed SOX certifications certifying controls were adequate); *In re OCA, Inc. Sec. and Deriv. Litig.*, 2006 WL 3747560, at *22 (E.D. La. Dec. 14, 2006) (SOX certifications when combined with other allegations of scienter create strong inference).

    Unqualified Audit Opinion: Crow argues that because NutraCea's auditors made a "clean audit opinion," an inference of scienter is negated, yet cites no facts about the audit opinion that negates his inference of scienter. Thus the argument is without merit. *See In re New Century*, 588 F. Supp. 2d 1206, 1231 (C.D. Cal. 2008) (finding clean audit opinion does not negate inference of scienter because: "The Officer Defendants do not point to specific references in the KPMG audit opinion that bear on their alleged recklessness in making statements regarding loan quality or underwriting."). Here, the accounting fraud involved manipulation of facts. For example, the related party nature of the $2.6 million transaction was "concealed" from the auditors, the Famous Discoveries transaction was a secret consignment arrangement, and there was a fraudulent "bill and hold" letter for the ITV transaction. *See Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297, 1314, n. 13 (C.D. Cal. 1996) ("the fact

violations . . ." 2005 WL 1787860, *7 (N.D. Cal. July 27, 2005). They also incorrectly rely on a pre-*South Ferry* decision, *In re Hansen Natural Corp. Sec. Litig.*, which found that the mere existence of an SEC investigation, where there was no other evidence of wrongdoing, does not infer scienter. 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007).

that [the] independent auditor may have approved the accounting methods will not shield [the officers] from liability for deception such methods may have caused.").[4]

The Offering: Defendants were also motivated to overstate revenue in order to inflate the Company's stock price for the purpose of making its private offering of stock and warrants at an artificially high price. The Company received gross proceeds of $20 million through a private stock offering that closed on April 30, 2008. The offering was commenced and completed only a few weeks after the Company filed its materially false and misleading Q4 and FY 2007 results with the SEC on March 17, 2007. Significantly, the Company had inflated FY 2007 revenue by 63%[5] and understated net loss by 31%. ¶142b. Defendants' motive to inflate the Company's Stock price in order to hold the offering at a higher price supports a strong inference of scienter. *See Daou*, 411 F.3d at 1023-24 (the company "acquired 11 companies by exchanging over 6.6 million shares of . . . [its artificially inflated] stock. . . . When considered as a whole, plaintiffs' allegations are sufficient to create a strong inference that all defendants except Moragne acted with at least deliberate recklessness"); *Howard v. Everex Sys.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (allegation that CEO and chairman of the board had motive to inflate sales to raise financing for company is probative of scienter); *In re Time Warner, Inc. Sec. Litig.*, 9 F.3d 259, 269-70 (2d Cir. 1993) (upholding allegation that officers were motivated to conceal "consideration of [a] rights offering to maintain a high stock price prior to announcement of the new rights offering in order to lessen the dilutive effect").

---

4  Crow cites *Hansen Natural Corp.*, 527 F.Supp.2d at 1158, however, the case is inapposite because plaintiff "failed to include 'the approximate amount by which revenues and earnings were overstated, ... provide[d] the dates of some of the related transactions and the ... company employees involved in the transactions.'" *Id.* Moreover, Crow's citation to *In re Wet Seal, Inc. Sec. Litig.*, 518 F.Supp.2d 1148, 1166 (C.D. Cal. 2007) does not save him because this case *does* involve "a case where Defendants used fraudulent accounting to portray a failing company as a profitable one."

5  *See* Kim Decl., Ex. 1, at p. 9.

<table>
<tr><td>1</td><td></td></tr>
</table>

1

2

3

4

5

6

    <u>Crow's Stock Transactions</u>:  Crow argues that because he did not sell his 9,700 shares of NutraCea stock, which at its peak was worth at most $1.50 a share, negates any inference of his scienter. Crow's $15,000 worth of stock is *de minimis* and neither strengthens nor weakens the allegations of his scienter.  The Ninth Circuit recently reiterated where other allegations demonstrate deliberate recklessness, the absence of suspicious stock sales is not determinative.  *Siracusano*, 2009 WL 3448282, at * 14.

7

### F. Defendants Are Not Saved by *Zucco Partners v. Digimarc*

8

9

10

11

12

13

14

15

16

17

18

19

    Crow and all other Defendants cite *Zucco* to suggest that this case is analogous. *Zucco* distinguishable on the facts because it involved a restatement relating to "accounting for costs of internal software development" which the Ninth Circuit explained was "not a simple task." *Id.*, at 987.  Additionally, the *Zucco* restatement also did "not concern especially prominent facts" because it concerned "certain costs [that] had been erroneously capitalized because either a portion of such costs did not qualify for capitalization …" *Id.*, at 1001. Here, the accounting questions involved much simpler very basic rules for revenue recognition, i.e., was the revenue earned, was the product shipped with risk of loss passing to the buyer, was the transaction a consignment arrangement as opposed to a sale on credit, and was the transaction a "bill and hold" transaction or not.  Moreover, the restatement adjustments in this case were of a far greater magnitude.

20

21

22

23

24

25

26

27

    Additionally, the confidential witness statements in *Zucco* were of lower level employees and included "vague [multiple level] hearsay" to establish knowledge on higher level management. *Id.*, at 997-98. The court also noted that certain confidential witness statements were "too conclusory" and that certain allegations were contradictory. *Id.* at 998 ("CW6 claims that Ranjit 'had to have known what was going on with respect to the Company's inventory manipulation,…'"). This is simply not the case here, as noted above, CW1 and CW2 directly negotiated the consignment transaction with Edson. Likewise, CW3 was a percipient witness that had a telephone call with Robert Maihos an

28

owner and control person of ITV. The witness statements here are not hearsay, but are based on direct personal knowledge. Nor are the witnesses' statements in this case contradictory, rather they are plausible and are corroborated by other evidence alleged in the Complaint.

## II.   PLAINTIFFS ADEQUATELY ALLEGE CROW'S CONTROL PERSON LIABILITY UNDER SECTION 20(A) OF THE EXCHANGE ACT

Crow moves to dismiss the control person liability claims against him on the ground that a primary violation of the Section 10(b) has not been adequately alleged against NutraCea. For the reasons set forth above and in Plaintiffs' memoranda in opposition to Crow and NutraCea's motions to dismiss, Plaintiffs have adequately alleged a primary violation against NutraCea.

## III.   THE COMPLAINT ADEQUATELY ALLEGES CLAIMS UNDER A.R.S. § 44-1991(A)(3) AND § 44-2003(A)

### A. Claims under 44-1991(A)(3) Are Governed by Strict Liability

Both the Ninth Circuit and the Arizona Court of Appeals have acknowledged the strict liability features of Arizona's securities statutes. *See Aaron v. Fromkin*, 196 Ariz. 224, 227 (App. 2000) ("Plaintiffs' burden of proof requires only that they demonstrate that the statements were material and misleading"); *Rosier v. First Fin. Capital Corp.*, 181 Ariz. 218, 222 (App. 1994) ("A misrepresentation in the sale of securities, even an innocent one, can be a violation of the securities statute . . . ."); *Garvin v. Greenbank*, 856 F.2d 1392, 1398 (9th Cir. 1988) (holding under § 44-1991 (now 44-1991(A)) that "[a] seller of securities is strictly liable for the misrepresentations or omissions he makes"). These decisions refer to misstatements under Subsection (2) of the statute, but the courts' reasoning applies to claims under Subsection (3) for a fraudulent course of business as well. That is because a fraudulent course of business under § 44-1991(A)(3) may be perpetrated through misrepresentations and omissions. *See State v. Superior Court*, 123 Ariz. 324, 331 (1979), *overruled in part on other grounds by State v.*

*Gunnison*, 127 Ariz. 110, 113 (1980) (holding in a case involving § 44-1991 (A)(2) and (A)(3) claims that "specific omissions and misrepresentations, which allegedly operated as a fraud," stated a claim). Moreover, nothing in the language of § 44-1991(A)(3) requires negligence. The language of § 44-1991(A)(3) focuses on the effect of the defendant's conduct on the investor. Reading negligence into the statute is imposing a requirement that the legislature did not impose. *See Aaron v. Fromkin*, 196 Ariz. at 227 ("The elements of securities fraud are articulated within the statute itself").[6]

Arizona's courts have found primary interpretative guidance in the statement of intent that accompanied passage of Arizona's Securities Act. That legislative statement directs Arizona courts to avoid "narrow or restricted interpretation[s]" in favor of a liberal construction that protects the public.[7] Narrowing the public protection that § 44-1991(A)(3) provides with a negligence standard that the statute's words do not require is the type of restrictive interpretation that the legislature wished to avoid.

Defendants' reliance on § 44-2082(B) for the proposition that the complaint must plead Defendants' negligence is entirely misplaced because the statute does not

---

6  The federal cases that Defendants cite for a negligence standard under Section 17(a)(3) of the 1933 Act are not controlling. In *Aaron v. SEC*, the U.S. Supreme Court held that scienter is not required for claims under Section 17(a)(3). 446 U.S. 680 (1980). *Aaron v. SEC* did not discuss whether negligence was required and did not make the holding on negligence that Defendants claim. Moreover, Arizona's courts have made it a point to hold that in interpreting Arizona's securities laws, they are not bound by U.S. Supreme Court interpretations of the federal securities laws. *Carrington v. Ariz. Corp. Comm'n*, 199 Ariz. 303, 305 (App. 2000).

7    When Arizona's Securities Act was enacted in 1951, the drafters included the following statement of legislative intent:

    Sec. 20. INTENT AND CONSTRUCTION. The intent and purpose of this Act is for the protection of the public, the preservation of fair and equitable business practices, the suppression of fraudulent or deceptive practices in the sale or purchase of securities, and the prosecution of persons engaged in fraudulent and deceptive practices in the sale or purchase of securities. This Act shall not be given a narrow or restricted interpretation or construction, but shall be liberally construed as a remedial measure in order not to defeat the purpose thereof.

Securities Act of Arizona, ch. 18, § 20, 1951 Ariz. Secs. Laws 46, 75.

oblige Plaintiffs to plead a "required"--but unspecified--state of mind. Rather, § 44-2082(B) requires that **if** an action under §§ 44-1991 or 44-1992 must plead that a defendant "acted with a particular state of mind . . . the complaint shall state with particularity facts . . . that the defendant acted with the required state of mind." § 44-2082(B). I.e., a particular state of mind is an element of some actions under § 44-1991, but not an element of others. For those actions under § 44-1991 in which a particular state of mind is an element, the complaint must plead relevant facts **with particularity**. For example, while claims under § 44-1991(A)(3), such as those in the instant matter, do not require negligence or scienter, claims under  § 44-1991(A)(1) do require scienter. *See Orthologic Corp. v. Columbia/HCA Healthcare Corp.*, 2002 WL 1331735, at *5 (D. Ariz. Jan. 07, 2002) ("Because the language of § 17(a) of the 1933 Act and § 1991 of the Arizona Securities Act are identical in all relevant respects and because the Arizona Supreme Court has acknowledged its concurrence with the United States Supreme Court's interpretation of § 17(a), this court finds that proof of scienter is required to succeed on a claim under § 1991(A)(1), but not under § 1991(A)(2) or § 1991(A)(3)").

Even if the Court finds that Plaintiffs must plead negligence, which is the only required state of mind that Defendants argue must be pleaded, Plaintiffs have at least made allegations that demonstrating Defendants' negligence.

## B. Defendants Violated Arizona Securities Law Even If They Did Not Dispose of Any Securities Or Make an Offer to Plaintiffs

Defendants are liable for violating §§ 44-1991(A) and 44-2003(A) even if they did not dispose of any securities or make an offer to Plaintiffs. § 44-1991(A) states in pertinent part:

A. It is a fraudulent practice and unlawful for a person, in connection with a transaction or transactions within or from this state involving an offer to sell or buy securities, or a sale or purchase of securities, . . . directly or indirectly to . . . :

. . . .
3. Engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit.

§ 44-1991(A). § 44-1991(A) does not state that only a party who offers to sell/buy or sells/buys securities violates the statute. Rather, it states that a party is liable if he "directly or indirectly . . . . engage[s] in any transaction, practice or course of business" "**in connection** with a transaction . . . involving an offer . . ." to sell/buy or a sale/purchase of securities. § 44-1991(A) (emphasis added).

The statute that defines who is liable for securities fraud is § 44-2003(A), not § 44-1991(A). *See Standard Chartered PLC v. Price Waterhouse*, 190 Ariz. 6, 22 (App. 1996) (holding that § 44-2003(A) defines those persons who may be liable). § 44-2003(A) states:

> Subject to the provisions of this section, an action brought under § 44-2001, 44-2002 or 44-2032 may be brought against any person, including any dealer, salesman or agent, who made, participated in or induced the unlawful sale or purchase, and such persons shall be jointly and severally liable to the person who is entitled to maintain such action. No person shall be deemed to have participated in any sale or purchase solely by reason of having acted in the ordinary course of that person's professional capacity in connection with that sale or purchase.

§ 44-2003(A). By its words, § 44-2003(A) imposes liability not only on persons who make a sale, but on those who induce or participate in the sale. Inducement and participation extend liability to persons other than the offeror or seller. For example, in *State v. Superior Court*, the defendants included the Arizona Corporation Commission and its officers. 123 Ariz. 324 (1979). Neither the ACC nor the officers offered or sold any securities, but the Arizona Supreme Court upheld an inducement claim against them. *Id.* at 332 ("The theory of Count I is clearly that the misrepresentations and omissions of the Corporation Commissioner officer defendants induced the plaintiffs to become depositors in the Associations. As such, a cause of action pursuant to § 44-

1   1991 is properly stated against these defendants. A.R.S. § 44-2003"); *Trump v. Badet*,

2   84 Ariz. 319, 322-23 (1958) (upholding judgment against incorporators under

3   participant liability who used an attorney to find investors for their company).

### C. Defendants Participated in the Sale of Securities and Induced Plaintiffs To Purchase Securities

Arizona's courts have insisted that Arizona's securities laws be read more broadly than federal law in order to protect investors. *See Siporin v. Carrington*, 200 Ariz. 97, 103 (App. 2001) (refusing to follow federal precedent on treatment of viatical settlements as investment contracts under statutory definition of securities because "we will not defer to federal case law when, by doing so, we would be taking a position inconsistent with the policies embraced by our own legislature"); *Eastern Vanguard Forex, Ltd. v. Ariz. Corp. Comm'n*, 206 Ariz. 399, 411 (App. 2003) (declining to follow federal precedent on control liability because the "actual participation" requirement adopted in some Ninth Circuit decisions was "too restrictive to guard the public interest as directed by our state legislature").

To that end, participation and inducement should be interpreted broadly enough to reach issuers and insiders who mislead aftermarket purchasers. Defendants mistakenly rely on federal law in interpreting § 44-2003 so narrowly that there would be no ability to reach insiders and issuers responsible for the distribution of misleading market information and fabrication of sham transactions, as Defendants were. *See Standard Chartered PLC*, 190 Ariz. at 22 ("The parties devote a portion of their briefs to federal cases interpreting federal securities statutes. *See* Securities Exchange Act of 1934, §§ 10(b), 18, 28, 28(a), 15 U.S.C.A. §§ 78j(b), 78r, 78bb, 78bb(a); Securities Act of 1933, §§ 11, 12(2), 15 U.S.C.A. §§ 77K, 77 l(2). Because, however, there is no counterpart in those statutes to the participation-or-inducement standard of our state statute, the federal statutes do not guide us here").

Indeed, § 44-1991 imposes an "affirmative duty not to mislead." *Aaron v. Fromkin*, 196 Ariz. at 227; *State v. Superior Court*, 123 Ariz. at 331; *Trimble v. Am.*

*Sav. Life Ins. Co.*, 152 Ariz. 548, 553 (App. 1986). Holding issuers and insiders strictly liable for their proportionate fault in misleading aftermarket investors advances the remedial goals of the Arizona statute. A narrower interpretation would not adequately protect the public. *See Strom v. Black*, 22 Ariz. App. 102, 103-04 (App. 1974) (affirming judgment against business broker and salesman who placed ads with misleading financial statements were found to have participated in and induced securities violations).

The Complaint alleges Defendants induced investors to purchase NutraCea stock, and therefore adequately pleads a cause of action under § 44-2003(A).[8] *See State of Arizona v. Superior Court*, 123 Ariz. at 330-31 (denying motion to dismiss on a §1901 claims against parties collateral to the securities transaction, because plaintiffs cited "specific omissions and representations" made by the collateral parties which induced plaintiffs to engage in the transaction). The Complaint alleges that Defendants' caused investors to purchase NutraCea stock at artificially inflated prices by misrepresenting the financial performance of NutraCea during the Class Period. ¶¶ 152, 164, 169, 170, 171.

Defendants' reliance on *Grand v. Nacchio,* 2009 WL 3103761 (Ariz. App. Div. 2, Sept. 29, 2009) is misplaced. *Grand* was decided on the question of whether an issuer "participated in" an aftermarket purchase by the appellant and did not address the question of what constitutes inducement.[9]

### D. Defendants Are Liable Regardless of Privity or a Lack Thereof

---

8   The word induce means: "To lead or move, as to a course of action, by influence or persuasion. See Synonyms at persuade."  The American Heritage® Dictionary of the English Language, Fourth Edition Copyright © 2009 by Houghton Mifflin Company.
9  Plaintiffs' liaison counsel in this action is also additional counsel in *Grand.*  Liaison counsel has informed the undersigned appellants in *Grand* intend on filing a petition for review with the Arizona Supreme Court.

16

Defendants misread *Trump*. *Trump* states as a general rule that an investor has no claim against a party who received no consideration. 84 Ariz. At 322. That statement is immediately followed by a discussion of § 44-2003(A), which *Trump* interpreted as extending liability to those who receive no consideration, but nonetheless induce the sale. *Id.* at 323. The same analysis of extended liability to nonsellers was followed in *State v. Superior Court*, 123 Ariz. at 331 (citing *Trump* for the general rule, but explaining that § 44-2003 allows a claim against any person who participates in or induces the sale).

Moreover, the idea of privity is inconsistent with participation and inducement under § 44-2003(A), which connotes a broader range of liability. Narrowing participation and inducement with a privity requirement would contravene the plain language of § 44-2003(A).

### E.  The Complaint Adequately Alleges Claims under A.R.S. § 44-1999(B)

As Plaintiffs alleged claims under § 44-1991(A)(3) as explained above, and as Defendants do not deny that Crow or Edson exercised actual power or control over Defendants, the claims under § 44-1999(B) should not be dismissed.

### CONCLUSION

For the foregoing reasons, the Court should deny Crow's motion.

Dated: November 4, 2009                    Respectfully submitted,


                                           **THE ROSEN LAW FIRM P.A**.


                                           /s/ Phillip Kim
                                           Phillip Kim (*pro hac vice*)
                                           Laurence Rosen (*pro hac vice*)
                                           Timothy Brown (*pro hac vice*)
                                           350 Fifth Avenue, Suite 5508
                                           New York, NY 10118
                                           Telephone: (212) 686-1060
                                           Fax: (212) 202-3827

                                           Lead Counsel for Plaintiffs

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Telephone: (602) 255-6000
Fax: (602) 255-0103

Liaison Counsel for Plaintiffs

PLS.' MEMORANDUM OF P&As IN OPP. TO DEF CROW'S MOTION TO DISMISS

1

**CERTIFICATE OF SERVICE**

2

3        I, Phillip Kim, hereby declare under penalty of perjury as follows:

4   I am attorney with the Rosen Law Firm, P.A., with offices at 350 5th Avenue, Suite 5508,

5   NY, NY 10118.  I am over the age of eighteen.

6        On November 4, 2009, I electronically filed the following

7   PLAINTIFFS'CONSOLIDATED MEMORANDUM OF POINTS AND

8   AUTHORITIES IN OPPOSITION TO DEFENDANT TODD C. CROW'S MOTION

9   TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION

10  COMPLAINT with the Clerk of the Court using the CM/ECF system which sent

11  notification of such filing to counsel of record.

12

13  Executed on November 4, 2009

14

15

16                                     _____/s/ Phillip Kim_____

17

18

19

20

21

22

23

24

25

26

27

28